## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**PREMIER INPATIENT PARTNERS LLC,**
**as third party beneficiary of S.B.,**

      **Plaintiff,**

**v.**                                                          **Case No: 8:18-cv-621-T-35AAS**

**AETNA HEALTH AND LIFE**
**INSURANCE COMPANY,**

      **Defendant.**

_____

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of the Plaintiff's Motion to Remand,[1] (Dkt. 13); Defendant's Response in opposition thereto, (Dkt. 29); Plaintiff's Reply to Defendant's Response, (Dkt. 56); Plaintiff's Notice of Supplemental Authority, (Dkt. 57); Defendant's Sur-Reply, (Dkt. 65); Plaintiff's Notice of Filing Exhibit to Plaintiff's Motion to Remand, (Dkt. 68); and Defendant's Notice of Filing Opposition to Motion to Remand.  (Dkt. 72)  Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiff's Motion to Remand.  (Dkt. 13)

---

[1] Additionally, on February 13, 2019, Plaintiff filed a separate Motion to Remand for the last-filed case of the thirty-two cases consolidated herein, <u>Premier Inpatient Partners, LLC, (D.A.Z.) v. Aetna Health & Life Insurance</u>, 8:19-cv-00242-MSS-AAS.  (<u>See</u> Dkt. 73)  Thereafter, Plaintiff filed what appears to be an identical motion, (Dkt. 76), with the exception of an exhibit, a copy of an opinion from the United States Court of Appeals for the Second Circuit.  (Dkt. 76–1)  It appears that Plaintiff filed these motions (hereinafter, "Motions to Remand") to ensure that 19-cv-00242 also included an individually labeled remand motion on the record.  Accordingly, the analysis herein incorporates the Plaintiff's arguments in favor of remand for all of the consolidated cases.

## I.    BACKGROUND

On or about February 16, 2018, Plaintiff Premier Inpatient Partners, LLC (hereinafter, "Premier" or "Plaintiff") filed this breach of contract action against Defendant Aetna Health and Life Insurance Company (hereinafter, "Aetna" or "Defendant") in the Circuit Court in and for Pinellas County, Florida, Small Claims Division ("Pinellas County Court").[2]   (Dkt. 2)   Plaintiff is a health care provider of emergency care and services, licensed and operating in the State of Florida.   (Id. at 1)   Defendant is a health maintenance organization ("HMO") that directly or indirectly solicits or effects coverage of, collects charges or premiums from, or adjusts or settles claims on behalf of residents of Florida for health insurers and HMOs through a health maintenance contract.   (Id. at 2)

By way of background, Congress enacted the Employee Retirement Income Security Act of 1974, (hereinafter, "ERISA"), to provide a uniform regulatory regime over employee benefit plans, including health plans offered through private-sector employers and unions.   See 29 U.S.C. § 1001 et seq.   The purpose of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries by setting out

---

[2] The Court notes that the cases consolidated herein were filed in two different Florida state courts.   The first group, (hereinafter, "Pinellas County Cases"), is comprised of ten (10) cases filed in the Circuit Court in and for Pinellas County, Florida, including (1) 8:18-cv-00621; (2) 8:18-cv-00622; (3) 8:18-cv-00623; (4) 8:18-cv-00663; (5) 8:18-cv-00664; (6) 8:18-cv-00665; (7) 8:18-cv-00667 (8) 8:18-cv-00668; (9) 8:18-cv-00798; and (10) 8:18-cv-00801.   (E.g., Dkt. 2)   The second group, (hereinafter, "Hillsborough County Cases"), is comprised of twenty-two (22) cases filed in the Circuit Court in and for Hillsborough County, Florida, including (1) 8:18-cv-01818; (2) 8:18-cv-01820; (3) 8:18-cv-01821; (4) 8:18-cv-01822; (5) 8:18-cv-01823; (6) 8:18-cv-02012; (7) 8:18-cv-02013 (8) 8:18-cv-02014; (9) 8:18-cv-02015; (10) 8:18-cv-02016; (11) 8:18-cv-02017; (12) 8:18-cv-02020; (13) 8:18-cv-02022; (14) 8:18-cv-02024 (15) 8:18-cv-02025; (16) 8:18-cv-02028; (17) 8:18-cv-02029; (18) 8:19-cv-00074; (19) 8:19-cv-00075; (20) 8:19-cv-00076; (21) 8:19-cv-00241; and (22) 8:19-cv-00242.   E.g., Premier Inpatient Partners, LLC, (E.A.) v. Aetna Health & Life Insurance, 8:18-cv-01818-MSS-AAS, Docket No. 2; see also Premier Inpatient Partners, LLC, (D.A.Z.) v. Aetna Health & Life Insurance, 8:19-cv-00242-MSS-AAS, Docket No. 1–1.

substantive regulatory requirements for employee benefit plans and providing appropriate remedies, sanctions, and ready access to the Federal courts.   Id.

Beginning in December 2017, Plaintiff filed a series of cases against Defendant in small claims court, alleging that Plaintiff provided medical treatment to patients, submitted claims for reimbursement of its charges for those services, and Defendant did not pay the full amount that Plaintiff billed for those services.   (E.g., Dkt. 2)   In the Pinellas County Cases, Plaintiff pursued the claims under a third-party beneficiary theory.   (Id.; see also supra n. 2)   In the Hillsborough County Cases, Plaintiff asserted the claims in its capacity as a non-participating healthcare provider.[3]   See supra n. 2; e.g., Premier Inpatient Partners, LLC, (E.A.) v. Aetna Health & Life Insurance, 8:18-cv-01818-MSS-AAS, Docket No. 2; see also, e.g., Premier Inpatient Partners, LLC, (D.A.Z.) v. Aetna Health & Life Insurance, 8:19-cv-00242-MSS-AAS, Docket No. 1–1.   In both groups of cases, Plaintiff seeks to enforce the terms of a health maintenance policy (hereinafter, "ERISA Plan") between Defendant and the patients to recoup the outstanding balance for billed services. (Id. at ¶ 38)   Plaintiff asserts that, as an out-of-network and noncontract provider for the patients, it is entitled to "recover benefits for health care treatment regarding the above-referenced policy" for emergency care and services rendered.   (Id. at ¶¶ 1, 31)   Plaintiff alleges that Defendant breached the ERISA Plan contract by "fail[ing] to properly pay or deny" Plaintiff's claims for services rendered to the patients in violation of Florida law. (Id. at ¶ 38)

On February 16, 2018, Plaintiff filed its original complaint (hereinafter, "Complaint")

---

[3] The Court notes that in the Hillsborough County Cases, Plaintiff does not expressly assert its claims under a third-party beneficiary theory.   See, e.g., Premier Inpatient Partners, LLC, (E.A.), 8:18-cv-01818-MSS-AAS, Docket No. 2; see also Premier Inpatient Partners, LLC, (D.A.Z.), 8:19-cv-00242-MSS-AAS, Docket No. 1–1.

in Pinellas County Court.   (Dkt. 2)   In Count I, Plaintiff alleged that Defendant failed to pay the proper rate for health care claims in violation of Fla. Stat. § 641.513(5).   (Id. at ¶¶ 24–34)   In Count II, Plaintiff asserted that Defendant failed to make timely payments in violation of Fla. Stat. §§ 641.3155 and 627.6131.[4]   (Id. at ¶¶ 35–40)   On March 14, 2018, Defendant removed this matter to federal court, asserting that this Court has original jurisdiction under 28 U.S.C. § 1331.   (Dkt. 1)

On May 9, 2018, after this case was removed, Premier filed a motion for leave to amend the Complaint.   (Dkt. 43)   On July 18, 2018, the Court granted Plaintiff's Motion, allowing withdrawal of Count II of the Complaint and an amendment of Count I.   (Dkt. 54) The resulting complaint (hereinafter, "Amended Complaint") alleges one count of breach of implied-in-law contract, alleging a violation of both Fla. Stat. §§ 641.513(5) and 627.64194.   (Dkt. 55 at ¶¶ 25, 31–33)

Although Plaintiff brings claims solely under state law, Defendant argues that removal is proper under 28 U.S.C. § 1441 based on the doctrine of complete preemption. (Dkt.1)   For the reasons set forth below, the Court finds that Defendant's asserted basis for removal is improper and **GRANTS** Plaintiff's Motion to Remand.   (Dkt. 13)

---

[4] In seventeen of the twenty-two Hillsborough County Cases, the Complaints assert two additional counts, "declaratory judgment" and "unjust enrichment/quantum merit," and reference an additional Florida statute, § 627.64194.   Id.; (Dkt. 55); supra n. 2.; see, e.g., Premier Inpatient Partners, LLC, (E.A.), 8:18-cv-01818-MSS-AAS, Docket No. 2 at 5–10.   In the 5 last-filed cases, including (1) 8:19-cv-00074; (2) 8:19-cv-00075; (3) 8:19-cv-00076; (4) 8:19-cv-00241; and (5) 8:19-cv-00242, the operative Complaints assert claims pursuant to only two Florida statutes, §§ 641.513(5) and 627.64194, and do not include any claims pursuant to § 3155 of Florida's Prompt Payment Act.   E.g., Premier Inpatient Partners, LLC, (D.A.Z.), 8:19-cv-00242-MSS-AAS, Docket No. 1–1.   These claims also appear to be akin to the statutory claims asserted in the Pinellas County Amended Complaints, however, do not include the additional claims pursuant to Florida common law.   See, e.g., Id.; see also (Dkt. 55).

## II.   SUBJECT MATTER JURISDICTION AND REMOVAL OF STATE COURT ACTIONS

As a preliminary matter, the Court finds that the original Complaint is the operative document for determining whether removal was proper. The Eleventh Circuit has established that "[j]urisdiction is determined by looking to . . . the plaintiff['s] original complaint entered at the time of removal." Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011) ("The existence of federal jurisdiction is tested as of the time of removal."). Accordingly, the Court reviews the facts of this case based on the Complaint at issue at the time of removal. (Dkt. 2); see also, Premier Inpatient Partners, LLC, (E.A.) v. Aetna Health & Life Insurance, 8:18-cv-01818-MSS-AAS, Docket No. 2 (hereinafter, "Hillsborough County First-Filed Case"); Premier Inpatient Partners, LLC, (D.A.Z.), 8:19-cv-00242-MSS-AAS, Docket No. 1–1 (hereinafter, "Hillsborough County Last-Filed Case").

Defendant removed this action under the general federal-question removal statute, which provides, "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). To be removable under this statute, the action must be founded on a claim or right arising under federal law and the action must be one of which the district court has original jurisdiction, which means that the action originally could have been filed in federal court. Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009) ("As a general rule, a case arises under federal law only if it is federal law that creates the cause of action.") (quoting Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996)).

"The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction, and it bears the burden of demonstrating that removal is proper." Hialeah Anesthesia Specialists v. Coventry Health Care of Fla., 258 F. Supp. 3d 1323, 1326 (S.D. Fla. 2017) (quoting City of Vestavia Hills v. Gen. Fid. Ins. Co., 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) and Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001)).   A district court is required to "strictly construe the right to remove" and apply a general "presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."   Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013)); see also Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.")   Nonetheless, "the court must be equally as vigilant in protecting a defendant's right to proceed in federal court as it is in respecting the state court's right to retain jurisdiction."   Id. (citing Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 766 (11th Cir. 2010)).

## A.  Federal Question Under Section 1331

Federal courts are courts of limited subject matter jurisdiction.   Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).   Federal district courts have original jurisdiction "of all civil actions arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331.   Ordinarily, "to determine whether the claim arises under federal law, [the Court] examine[s] the well-pleaded allegations of the Complaint and ignore[s] potential defenses . . . ." Scarborough v. Carotex Constr., Inc., 420 F. App'x 870, 873 (11th Cir. 2011) (quoting Beneficial Nat'l

Bank v. Anderson, 539 U.S. 1, 6 (2003) (citation and quotation marks omitted)).   Under the "well-pleaded-complaint" rule, the Supreme Court has stated that a "suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."   Id.

Here, Defendant does not appear to argue removal under the well-pleaded complaint rule in the Notice of Removal.   (Dkt. 1)   In fact, the Parties appear to agree that the face of Plaintiff's Complaint does not assert any federal claims.   Instead, Defendant asserts that Plaintiff's claims are subject to federal question removal based on the preemption exception to the well-pleaded complaint rule.   (Id. at ¶¶ 11–18)

### 1.  ERISA Preemption Overview

Notably, "ERISA is one of only a few federal statutes under which two types of preemption may arise: [complete] preemption and [conflict] preemption."   Conn. State Dental Ass'n, 591 F.3d at 1344.   Complete preemption is a judicially-recognized exception to the well-pleaded complaint rule that is jurisdictional in nature.   Id.   Complete preemption under ERISA derives from its civil enforcement provision, 29 U.S.C. § 1132(a) (hereinafter, "ERISA § 502(a)"), which "creates a civil cause of action for participants and beneficiaries of ERISA plans to recover benefits or enforce rights under an ERISA plan."   Borrero v. United HealthCare of N.Y., Inc., 610 F.3d 1296, 1301 (11th Cir. 2010) (quoting ERISA § 502(a)).   "This section definitively 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"   Id. (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (internal citations omitted)); see also Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999) ("When Congress comprehensively occupies a field of law,

any civil complaint raising this select group of claims is necessarily federal in character and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331.") (internal citations omitted).

On the other hand, "[c]onflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims . . . aris[ing] from ERISA's express preemption provision, § 514(a), which preempts any state law claim that 'relates to' an ERISA plan." Conn. State Dental Ass'n, 591 F.3d at 1344; 29 U.S.C. § 1144(a) (hereinafter, "ERISA § 514(a)").   Pursuant to ERISA § 514(a),

> [e]xcept as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS § 1003(b)].

Significantly, "defensive preemption . . . provides only an affirmative defense to state law claims and is not a basis for removal." Id. (citing Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1012 n.6 (11th Cir. 2003)).   Defendant appears to rest at least part of its removal argument on ERISA's § 514 preemptive power.   (Dkt. 1 at ¶ 11)   To the extent that it does, the Court finds that § 514 implicates ERISA's defensive preemption pursuant to 29 U.S.C. § 1144, and thus, is not applicable to the removal analysis.   See ERISA § 514(a); Conn. State Dental Ass'n, 591 F.3d at 1344.   Accordingly, since "the propriety of removal is at issue, [the] analysis concerns [only] complete preemption."   Id.

Congress's intent "is the ultimate touchstone" of a compete preemption analysis. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).   The Supreme Court set out a two-part test in Aetna Health Inc. v. Davila for complete preemption under ERISA's § 502(a) remedies provision.   542 U.S. 200, 209 (2004).   The Eleventh Circuit adopted the Davila

8

framework for the ERISA preemption analysis in Conn. State Dental Ass'n, 591 F.3d at 1345.   See also Borrero, 610 F.3d at 1301.   Under this two-part analysis, a "state law claim is completely preempted by ERISA, and therefore removable to federal court, if two conditions are met: [1] the claimant must have been able to, at some point in time, bring his claim under ERISA § 502(a)(1)(B), and [2] there must be 'no other independent legal duty that is implicated by a defendant's actions.'"   Conn. State Dental Ass'n, 591 F.3d at 1344 (quoting Davila, 52 U.S. at 210).   Both conditions must "be satisfied for a claim to be completely preempted."   Borrero, 610 F.3d at 1304.

### 2. Eleventh Circuit Adoption of the Davila Test

The Eleventh Circuit applied Davila's two-part test in Conn. State Dental Ass'n to determine whether removal under § 1441 was proper based on ERISA § 502(a) preemption.   591 F.3d at 1337.   As to the first Davila condition, the court determined that resolution of "the 'rate of payment' and 'right of payment' distinction" is dispositive of whether a claimant could have brought its claim under ERISA.   Conn. State Dental Ass'n, 591 F.3d at 1350.   That is to say, if a claim is for coverage under ERISA, then the first Davila condition is likely met; however, if the coverage determination under ERISA has already been made and the Plaintiff is merely disputing the rate of payment, then the first Davila condition will likely not be met.   Borrero, 610 F.3d at 1302 (quoting Conn. State Dental Ass'n, 591 F.3d at 1350–51) ("[The Eleventh Circuit has] indicated that a 'rate of payment' challenge does not necessarily implicate an ERISA plan, but a challenge to the 'right to payment' under an ERISA plan does.").

"Rate of payment claims tend to arise when the third-party provider has a separate agreement, whether written or oral, with the insurance company regarding their fee

arrangements and the provider is disputing the rate at which it was paid for providing covered services to the insured." Reva, Inc. v. United Healthcare Ins. Co., Civil Action No. 17-24210-Civ, 2018 U.S. Dist. LEXIS 112955, at *7 (S.D. Fla. June 11, 2018) (citing Conn. State Dental Ass'n, 591 F.3d at 1342); see also Jacobs v. Health, No. 14-cv-24725, 2015 WL 12699875, at *1 (S.D. Fla. March 12, 2015) (Ungaro, J.).   "On the other hand, a 'right to payment claim challenges the insurer's denial of payment, which is based on a coverage determination under an ERISA plan.'" United Healthcare Ins. Co., 2018 U.S. Dist. LEXIS 112955 at *7 (quoting Emergency Servs. of Zephyrhills, P.A. v. Coventry Health Care of Fla., Inc., 281 F. Supp. 3d 1339, 1345 (S.D. Fla. 2017)).   "The distinction between rate of payment and right to payment, therefore, is whether the claims are payable at all." Id. (quoting Gables Ins. Recovery v. United Healthcare Ins. Co., 39 F. Supp. 3d 1377, 1384 (S.D. Fla. 2013)).   "While a rate of payment challenge does not necessarily implicate an ERISA plan, a challenge to the right to payment under an ERISA plan does." Id.

In Conn. State Dental Ass'n, two dentists and their representative organization asserted a five-count class action against a health plan administrator, alleging "claims for breach of contract, breach of the duty of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), negligent misrepresentation, and unjust enrichment."[5]   591 F.3d at 1342.   The crux of the allegations was that the administrator "employed a number of practices, such as 'improper downcoding' and 'improper bundling,' as a means of underpaying [the] participating dentists" below their

---

[5] Conn. State Dental Ass'n was transferred to the Southern District of Florida by the Joint Judicial Panel on Multi-District Litigation as a "tag along" case in the multi-district litigation titled In re Managed Care Litig., 430 F. Supp. 2d 1336 (S.D. Fla. 2006), aff'd sub nom. Shane v. Humana, Inc., 228 F. App'x 927 (11th Cir. 2007) (unpublished).   591 F.3d at 1342.

contracted rates for "medically necessary" services.   Id. at 1342.   The health plan administrator removed the case to the federal court "on the basis that Plaintiffs' state law claims [were] completely preempted by ERISA."   See id.

After conducting Davila's two-part test, the Eleventh Circuit concluded that plaintiffs' allegations amounted to a "hybrid claim, part of which is within § 502(a) and part of which is beyond the scope of ERISA." Id. at 1351.   The court reasoned that the Complaint alleged that the administrator both paid plaintiffs the wrong rate and denied payment altogether for medically necessary services.   Id. at 1351.   "[B]ecause the [plaintiffs] complain, at least in part about the denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA."   Id.   Ultimately, the Eleventh Circuit held that "the dentists' claims were completely preempted by ERISA's remedies provision and found that the court therefore had subject matter jurisdiction over the claims."   Id. at 1341.

### B.  Application of the Davila Test

Defendant asserts four principal arguments in support of its contention that Plaintiff's claims are completely preempted under ERISA § 502(a).   (Dkt. 1; Dkt. 29); Hillsborough County First-Filed Case, Docket 18.   First, Defendant asserts that the Complaint disputes the amount Plaintiff was reimbursed for medical services provided under "an employer-sponsored health plan governed by [ERISA]."   (Dkt. 1 at ¶¶ 5, 14; Dkt. 29 at 10); Hillsborough County First-Filed Case, Docket 18 at 2.   In response, Plaintiff asserts that its claims are not preempted under ERISA because the Complaint expressly seeks reimbursement only under Florida law and does not assert any federal claims.   (Dkt. 2; Dkt. 13 at 1, 9; Dkt. 76 at 1); see also, e.g., Hillsborough County First-

Filed Case, Docket No. 11 at 1.    Plaintiff also emphasizes that it is not an ERISA plan participant and does not maintain any contractual relationship with Defendant, and, thus, has not agreed to accept discounted rates for its medical services.    (Dkt. 2 at ¶ 14; Dkt. 13 at 4; Dkt. 76 at 3); see also, e.g., Hillsborough County First-Filed Case, Docket No. 11 at 1–2.

Second, Defendant argues that Davila's "'rate of payment' and 'right of payment' distinction" does not apply in this case because such distinction is only applicable in cases involving a separate agreement between the Parties.    (Dkt. 29 at 3); Hillsborough County First-Filed Case, Docket 18 at 2.    Defendant insists that "[e]ven if such an agreement did exist" in this action, Plaintiff's allegations are still preempted under ERISA and, at a minimum, amount to "a 'hybrid' claim, seeking both the right of repayment and the rate of repayment."    (Id.)    Plaintiff asserts that the "rate" versus "right" distinction is applicable in this action, and emphasizes that it asserts a "rate" claim, and therefore, its claims do not "fall within the scope of ERISA."    (Dkt. 13 at 7; Dkt. 76 at ¶¶ 23–26); Hillsborough County First-Filed Case, Docket No. 11 at 13–15.    Specifically, Plaintiff asserts that coverage is not an issue because Defendant "already adjudicated" all claims for reimbursement and determined each to be a "covered service."    (Dkt. 2 at ¶¶ 13, 22–23; Dkt. 13 at 4; Dkt. 76 at 8); Hillsborough County First-Filed Case, Docket No. 11 at 3.

Defendant's third argument in support of removal is that Plaintiff has derivative ERISA standing based on the assignment of benefits Plaintiff allegedly received for all patient claims at issue.    (Dkt. 29 at 8, 22); Hillsborough County First-Filed Case, Docket 18 at 2, 7–8.    Specifically, Defendant alleges that "where [as here] the provider submitted claim forms that indicated that it received an assignment of benefits from the patient, the

provider ha[s] standing under ERISA;" (Id.)   As a result, Defendant asserts that the payments at issue "ultimately hinge[] on the existence of the [ERISA] Plan."   (Dkt. 29 at 8, 10–14; see also Dkt. 1 at ¶ 8); Hillsborough County First-Filed Case, Docket 18 at 2. Plaintiff claims that it "lacks standing to sue under ERISA" because Defendant fails to meet its burden of proving that Plaintiff has derivative standing.   (Dkt. 13 at 7; Dkt. 76 at ¶ 18); Hillsborough County First-Filed Case, Docket 11 at 2.   Plaintiff maintains that the Florida statutory claims asserted in the Complaint "do not implicate ERISA plans," and do "not require an interpretation of the ERISA plan's terms."   (Dkt. 13 at 7; Dkt. 76 at ¶¶ 23–26); Hillsborough County First-Filed Case, Docket No. 11 at 13–15.   As a result, Plaintiff contends, "[t]here is no scenario in which [a patient] would have an independent cause of action to pursue these state claims," so, it is impossible that any patient could have conferred [the asserted] rights to Plaintiff.   (Dkt. 13 at 8; Dkt. 76 at 15–18); Hillsborough County First-Filed Case, Docket 11 at 7–9.

Lastly, Defendant contends that the Florida statutes cited in the Complaint do not allow Plaintiff to assert its claims directly against Defendant, unless the claims are brought in a derivative capacity.   (Dkt. 29 at 8, 10–14; Dkt 1; see also, e.g., Dkt. 2 at ¶¶ 36–40); Hillsborough County First-Filed Case, Docket 18 at 2, 7.   Consequently, the only avenue by which Plaintiff can bring "its claims [is] in its capacity as an assignee or third-party beneficiary to the ERISA Plan at issue."   (Dkt. 29 at 8, 10–14; see also Dkt. 1 at ¶ 8); Hillsborough County First-Filed Case, Docket 18 at 2, 7.   Moreover, Defendant argues that, in the Pinellas County Cases, Plaintiff expressly asserts its claims in a derivative capacity under a third-party beneficiary theory, and therefore, cannot escape ERISA preemption.   (Dkt. 29 at 14–15; see e.g., Dkt. 2)   Plaintiff responds that the cited Florida

statutes "confer a private right of action," providing an avenue for Plaintiff to sue Defendant based on an independent legal duty that is "not tied to any ERISA plan, benefit, or fiduciary." (Dkt. 13 at 10); see also Dkt. 76 at ¶¶ 29–34); Hillsborough County First-Filed Case, Docket No. 11 at 13–15. Each of Defendant's assertions is addressed in turn.

The Court first addresses Defendant's argument that the rate of payment and right of payment "distinction is inapplicable to this case." (Dkt. 29 at 3, 15–16) (referencing Conn. State Dental Ass'n, 591 F.3d at 1350); Hillsborough County First-Filed Case, Docket No. 18 at 2. Defendant asserts that because there is no agreement between the Parties that is "separate from [the] ERISA plan," Davila's framework does not apply in this action. (Id. at 3) However, Defendant fails to cite any case authority to support its conclusory contention that the Eleventh Circuit intended for the Davila analysis to apply *only* where a separate agreement exists. (See, e.g., Dkt. 29 at 3, 15–16)

Consistent with other decisions addressing this issue, the Court finds that "[n]o part of *Conn. State Dental* supports the proposition that an express written provider agreement must be present before the rate-of-payment/right-of-payment test can apply and that, in the absence of a written agreement, any claim for payment must be preempted." Hialeah Anesthesia Specialists v. Coventry Health Care of Fla., 258 F. Supp. 3d 1323, 1329 (S.D. Fla. 2017) (finding that the "right of payment" versus "rate of payment" distinction applies to out-of-network providers who bring claims under implied contract theories); Healthkeepers, Inc., 2018 U.S. Dist. LEXIS 112757 at *10; United Healthcare Ins. Co., 2018 U.S. Dist. LEXIS 112955 at *5–6 ; see also Emergency Servs. of Zephyrhills, P.A., 281 F. Supp. 3d at 1347 (citing Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236,

1347 (11th Cir. 2001)) ("A provider may still, however, 'hold[] two separate claims' after receiving an assignment of benefits if the provider 'has a state law claim independent of the claim arising under the assignment.'").

In Hialeah Anesthesia Specialists, the defendant relied on the same argument Defendant asserts in this case, contending that Davila's two-part test applies only in cases arising from the breach of an express provider agreement. Id. The Hialeah Anesthesia Specialists court disagreed, reasoning that

> [i]n the Court's view, *Connecticut State Dental* leaves the proverbial door sufficiently open that the test could come into play in a case like this one, involving allegations of an implied [agreement]—be it implied-in-fact or implied-in-law—between an out-of-network provider and an insurer.
>
> At the very least, there is an uncertainty as to the breadth of the 'an agreement' language. It could extend to cover an implied agreement like the one the Plaintiffs allege existed between each of them and Coventry. In such case—provided that the Plaintiffs assert only a rate-of-payment dispute—the claims would not be preempted and, thus, there would be no jurisdiction. Or it could not so extend. In such case—provided that Coventry satisfies the other *Davila* requirements—the claims would be completely preempted and, thus, there would be jurisdiction.

Hialeah Anesthesia Specialists, 258 F. Supp. 3d at 1329–30. The Court agrees with the Hialeah Anesthesia Specialists court's rationale that it "would not be appropriate to hamstring the [Plaintiff's] ability to keep [its] case in state court by depriving [it] of the opportunity to invoke the test and show whether [its] claims fit squarely within its bounds." Id. Consequently, in the absence of any other binding authority, the Court applies the Davila test adopted by the Eleventh Circuit. See Conn. State Dental Ass'n, 591 F.3d at 1344 (quoting Davila, 52 U.S. at 210).

       *1.  Second <u>Davila</u> Inquiry – Whether There is an Independent Legal Duty Implicated by Defendant's Actions*

As explained above, ERISA completely preempts a state law claim, if [1] at some point in time, the claimant was able to bring his claim under ERISA § 502(a)(1)(B), and [2] there is no other independent legal duty that is implicated by a defendant's actions. <u>Conn. State Dental Ass'n</u>, 591 F.3d at 1344; <u>Davila</u>, 52 U.S. at 210.   Significantly, both conditions must "be satisfied for a claim to be completely preempted."   <u>Borrero</u>, 610 F.3d at 1304.   Applying the test here, the Court first addresses the second <u>Davila</u> prong to determine whether any "other independent legal duty" is implicated by Defendant's actions, because if a separate independent legal duty is established, then the inquiries under the first prong are irrelevant.

### a. <u>Florida Law Overview</u>

Florida law requires HMOs, such as Defendant, to reimburse out-of-network emergency medical service providers, such as Plaintiff, within certain time parameters and at specified rates for emergency services medical treatment.   <u>See</u> Fla. Stat. §§ 641.513(5),  641.3155(3),  627.6131(4)(b),  and 627.64194.    In each of the Pinellas County Complaints, Plaintiff seeks to recoup the outstanding balance for its billed emergency medical services, citing three Florida statutes as the bases for its allegations. (Dkt. 2)   Additionally,  in several of the Hillsborough County Complaints, Plaintiff cites a fourth Florida statute, § 627.64194.[6]   <u>See e.g.</u>, <u>Hillsborough County First-Filed Case</u>,

---

[6]  As previously noted, in seventeen of the twenty-two Hillsborough County Cases, Plaintiff references an additional Florida statute, § 627.64194.  <u>See</u> <u>supra</u> n. 3; (Dkt. 55); <u>compare</u> <u>Hillsborough County First-Filed Case</u>, Docket No. 2 at 5–10; <u>with</u> <u>Premier Inpatient Partners, LLC,</u> <u>(D.A.Z.)</u>, 8:19-cv-00242-MSS-AAS, Docket No. 1–1.

Docket No. 2 at 8–9.   First, Plaintiff asserts its claims under § 641.513(5), which states that

> [r]eimbursement for services by a provider who does not have a contract with the health maintenance organization shall be the lesser of:
>
>   (a)  The provider's charges;
>   (b)  The usual and customary provider charges for similar services in the community where the services were provided; or
>   (c)  The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Fla. Stat. § 641.513(5).

Secondly, Plaintiff asserts its claims under § 641.3155, a provision of Florida's "Prompt Pay Act" mandating that HMOs must respond to and pay medical service provider claims in accordance with specified requirements.   Fla. Stat. § 641.3155. Specifically, § 641.3155(3)(b) states that "within 20 days after receipt of [an electronically submitted] claim" an HMO "shall . . . pay the claim or notify provider or designee if a claim is denied or contested."   Id. at (3)(b).   Subsection (e) prescribes that a "claim must be paid or denied within 90 days after receipt of the claim" and "[f]ailure to pay or deny a claim within 120 days after receipt of the claim creates an uncontestable obligation to pay the claim."   Id. at (3)(e).   Additionally, subsection (3)(c) requires an HMO to include certain documentation to the provider for any contested claim.   Specifically,

> 1.   Notification of the health maintenance organization's determination of a contested claim must be accompanied by an itemized list of additional information or documents the insurer can reasonably determine are necessary to process the claim.
>
> 2.   A provider must submit the additional information or documentation, as specified on the itemized list, within 35 days after receipt of the notification.

Id. at (3)(c).   Lastly, § 641.3155(4) establishes the time requirements for nonelectronically submitted claims.   Id. at (4).

The third statute Plaintiff cites is § 627.6131, a section of the Florida Insurance Code imposing time and documentation requirements concerning the payment of health insurance claims.   Fla. Stat. § 627.6131.   The language and requirements in the applicable provisions of this section are identical to the cited provisions of § 641.3155. compare id. at (4)–(5), with Fla. Stat. § 641.3155 (3)–(4).   For example, § 627.61314 imposes the same requirement that is mandated under § 641.3155 for an insurer to pay or deny an electronically submitted claim "within 20 days."   Fla. Stat. § 627.6131(4)(b). Additionally, § 627.6131 also similarly instructs that an insurer's failure to respond to a claim "within 120 days after receipt of the claim creates an uncontestable obligation to pay the claim."   Id. at (4)(e).   Subsection (4)(c) also echoes § 641.3155(3)(c) concerning the required documentation that must accompany any contested or denied claim.   Id. at (4)(c).   Likewise, § 627.6131(5) parrots § 641.3155(5)'s mandate concerning the procedure for nonelectronically submitted claims.   Id. at (5).

Lastly, in several of the Hillsborough County Complaints, Plaintiff cites a fourth Florida statute, § 627.64194.   E.g., Hillsborough County First-Filed Case, Docket No. 2. Section 627.64194 of the Florida Insurance Code also establishes coverage requirements for non-participating provider services and sets payment collection limitations.   See Fla. Stat. § 627.64194.   The applicable section of the statute, § 627.64194(4), requires an insurer to "reimburse a non-participating provider of services . . . as specified in s. 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy, within the applicable timeframe provided in s. 627.6131."   Id. at

(4).   Moreover, § 627.64194(6) provides that "any dispute with regard to the reimbursement to the non-participating provider . . . shall be resolved in a court of competent jurisdiction or through the voluntary dispute resolution process in s. 408.7057." Id. at (6).

The Court notes that in the Hillsborough County Cases, Plaintiff appears to assert all claims as direct actions in its capacity as a provider.   Hillsborough County First-Filed Case, Docket No. 2; Hillsborough County Last-Filed Case, Docket No. 1–1.   In the Pinellas County Cases, Plaintiff expressly pleads both of its causes of action in its capacity as a third party beneficiary.   (Dkt. 2)   Nonetheless, in all of the cases Plaintiff cites only state law, not federal law; expressly disclaims an interpretation of the ERISA Plan; and, asserts its claims under Florida statutes or Florida common law.   (Dkt. 2); Hillsborough County First-Filed Case, Docket No. 2; Hillsborough County Last-Filed Case, Docket No. 1–1.   The Court addresses each group of cases in turn.

a. Hillsborough County Cases

The Court first addresses the claims Plaintiff asserts in the Hillsborough County Cases under Florida Statute § 641.513(5).   Hillsborough County First-Filed Case, Docket No. 2; Hillsborough County Last-Filed Case, Docket No. 1–1.   The Florida Court of Appeals established a healthcare provider's right to maintain a private cause of action under § 641.513 against an HMO in Peter F. Merkle, M.D., P.A. v. Health Options, Inc., 940 So. 2d 1190 (Fla. 4th DCA 2006).   The court found that "the terms of section 641.513(5) are obligatory ('shall')" and "aimed at protecting non-participating providers who must provide emergency medical services to HMO subscribers [to ensure] they are

compensated fairly." Peter F. Merkle, M.D., P.A., 940 So. 2d at 1196–97 (internal citations omitted).

Significantly, the Merkle Court analyzed the legislative intent of the statute, noting that in "enacting 641.513(5), the legislature intended to protect not only subscribers, but also non-participating providers." Id. at 1197. The "legislative history [of § 641.513] confirms that the legislature intended non-participating providers to be reimbursed in accordance with the statute. Id. (quoting Fla. H.R. Comm. on Health Care, CS for HB 979 (1996) Bill Analysis 4 (May 14, 1996) (on file with comm.) (indicating that the legislature intended "that subscribers will receive needed services for which hospitals and emergency room physicians will receive reimbursement")). Accordingly, the question under this statute "is not whether the HMOs are liable under section 641.513(5), but rather what is the appropriate method for determining the extent of that liability." Id.

It is clear that § 641.513(5) confers a private right of action upon Plaintiff, as a non-participating provider, to assert its claims against Defendant, as an HMO. Peter F. Merkle, M.D., P.A., 940 So. 2d at 1190. Additionally, in the Hillsborough County Cases, Plaintiff asserts its claims via a direct action in its capacity as a provider. Hillsborough County First-Filed Case, Docket No. 2; Hillsborough County Last-Filed Case, Docket No. 1–1; see also Conn. State Dental, 591 at 1345 (quoting Davila, 542 U.S. at 210). As a result, the Court finds that these cases do, in fact, impose upon Defendant an independent legal duty pursuant to Florida Statute § 641.513(5). (Id.) There is no need to continue the Davila analysis for the Hillsborough County Cases because both standards under Davila must be met, and where one fails, remand is required. See Borrero, 610 F.3d at 1304 (The Davila test is conjunctive, requiring that both conditions

"be satisfied for a claim to be completely preempted.")   Accordingly, the Hillsborough County Cases must be remanded for consideration in the requisite state court.

### b. Pinellas County Cases

Turning to the Pinellas County Cases, the Court again begins its analysis under Florida statute § 641.513(5).   See Fla. Stat. § 641.513(5).   As explained above, it is well established that § 641.513 creates a private right of action for non-participating healthcare providers.   Peter F. Merkle, M.D., P.A., 940 So. 2d at 1190.   However, although a non-participating healthcare provider could theoretically assert a private cause of action under § 641.513, which could then implicate an HMO's actions under an independent legal duty, the Court cannot draw such a conclusion in the Pinellas County Cases.   Id.; (see also, e.g., Dkt. 2 at 1, 5–7).   The Complaint in the Pinellas County Cases expressly asserts Plaintiff's claims under a "third party beneficiary" theory—not as a "private right of action." (Id.)   Consequently, the Court must construe Plaintiff's claims as derivative actions brought in Plaintiff's capacity as a third party beneficiary.   (Dkt. 2 at 1, 5–7)   Accordingly, Plaintiff cannot rely on § 641.513 to establish an independent legal duty in the Pinellas County Cases.

For the same reason, the remaining claims, asserted under §§ 641.3155[7] and 627.6131, must also be similarly construed under a third party beneficiary theory.   (Dkt.

---

[7] Additionally, a review of the Florida HMO Act's "prompt pay" laws reveals that § 641.3155 does not expressly authorize a private cause of action to enforce its provisions.   Indeed, the Florida Supreme Court has clarified that although a violation of the prompt pay statutes can serve as a component of a broader common law cause of action, "an allegation that an HMO violated the prompt pay provisions is not sufficient by itself to establish a private cause of action."   Medicomp, Inc. v. UnitedHealthCare Ins. Co., No. 6:12-cv-100-Orl-22DAB, 2013 U.S. Dist. LEXIS 195495, at *9 (M.D. Fla. Jan. 2, 2013) (quoting Found. Health v. Westside EKG Assocs., 944 So. 2d 188, 190 (Fla. 2006) (internal quotation and citation omitted)).   Accordingly, under § 641.3155, medical service providers may only "bring a cause of action under the "prompt pay" laws as a

2 at 1, 5–7)   Accordingly,  none of the Pinellas  County  Cases, construed  as derivative

actions,  plead  an independent  legal duty.

### 2. First _Davila_ Inquiry – Whether Plaintiff Could Have Brought Its Claims Under ERISA

As such the Court  must  return  to the first inquiry  under  the Davila  analysis  to

determine whether the Pinellas County Cases are subject to ERISA § 502(a)'s preemptive

power.    Again,  the first "question  posed  by Davila  in assessing  complete preemption is

whether 'an individual,  at some point  in time, could have  brought  his claim under  ERISA

§ 502(a)(1)(B).'"   Conn. State Dental, 591 at 1350 (quoting Davila, 542 U.S. at 210); see

also Borrero, 610 F.3d at 1301–02.   "'This part of the test is satisfied if two requirements

are met: (1) the plaintiff's  claim must  fall within  the scope  of ERISA;  and (2) the plaintiff

must  have  standing  to sue under  ERISA.'"   Conn. State Dental, 591 at 1350 (quoting

Davila, 542 U.S. at 211–12).   The Court first considers "whether the claims are within the

scope of [ERISA] § 502(a)(1)(B), or in other words, whether Plaintiff's  claims qualify  as a

"rate"  issue, a coverage  issue, or both.   See id.

The Eleventh  Circuit  has instructed  that the "the 'rate of payment'  and 'right of

payment'  distinction"  is dispositive  of whether  a claimant  could have  brought  its claim

under  ERISA.   Conn. State Dental Ass'n, 591 F.3d at 1350; Borrero, 610 F.3d at 1302

(The  Eleventh  Circuit  has "indicated  that a 'rate of payment'  challenge  does  not

necessarily implicate  an ERISA  plan, but a challenge  to the 'right to payment'  under  an

---

third-party beneficiary to the contract between the [HMO] and its subscriber based on allegations
that the HMO failed to comply with § 641.3155, Fla. Stat."  Id.   Consequently, even if asserted
as direct actions, Plaintiff's claims under § 641.3155 are viable only under a third-party beneficiary
theory and do not amount to an "independent" legal duty under Davila.

ERISA plan does."). The Court does not, however, have sufficient information to make this determination. Specifically, the Complaint does not plead whether the challenged failure to remit a full payment is due to a determination that the rate of pay is in dispute, or due to a challenge regarding the duty to pay some aspect of a claim at all, resulting in Plaintiff having received less than full payment. While certain factual allegations of the Complaint support Plaintiff's contention that its claims only involve a "rate of payment" dispute, a closer reading of the Complaint indicates that Plaintiff's allegations may also implicate the "right to payment." (Dkt. 2) For example, in the Complaint, Plaintiff alleges that it "specifically challenges Defendant's billed rate reductions" and "has not agreed . . . to be bound by the Defendant's reimbursement policies or rate schedules . . . ." (Dkt. 2 at ¶¶ 21–14) In addition, Plaintiff asserts that "Defendant received notice of the covered loss . . . [yet] failed to pay the proper rate for the subject claim(s)." (Id. at ¶¶ 31–32) These allegations suggest that at least some of Plaintiff's claims may require the interpretation of the underlying ERISA Plan to determine whether Defendant properly paid or disclaimed Plaintiff's billed expenses for the medical services provided.

Without additional information, the Court is unable to complete the Davila analysis because the Complaint and record evidence before the Court are insufficient to resolve the mandatory inquiries. If, as Defendant asserts, its failure to reimburse Plaintiff the full rate for the claims at issue was based on the extent of the underlying ERISA Plan's coverage, in part or in whole, this action implicates a "right to payment" issue. On the other hand, if, as Plaintiff asserts, Defendant has in fact adjudicated the patient claims at issue and already determined each claim to be covered under the ERISA Plan policy, and Defendant's reductions are due to a dispute over the percentage of payment owed, then

the only issue is the "rate of payment" at which Plaintiff was reimbursed.   And of course, the remittance amount from Defendant could have been derived by both: a decision to disallow certain claimed amounts entirely due to the provisions of the ERISA Plan, and to pay reduced percentages for certain covered claims.   This would be the so-called hybrid payment decision.   In sum, the Court lacks sufficient information regarding the basis for Defendant's failure to pay the full amount demanded for the submitted claims to conclude that the payment decisions implicate the ERISA Plan.

Accordingly, Defendant has failed to meet its burden of proving that federal subject matter jurisdiction exists, and therefore, removal is permitted.   Hialeah Anesthesia Specialists, 258 F. Supp. 3d at 1326 (quoting City of Vestavia Hills, 676 F.3d at n.1 and Williams, 269 F.3d at 1319) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction, and it bears the burden of demonstrating that removal is proper."); see also Scimone, 720 F.3d at 882.   Federal "jurisdiction is either evident from the removing documents or remand is appropriate."   Lowery v. Ala. Power Co., 483 F.3d 1184, 1213-14 (11th Cir. 2007).   Indeed, where a defendant has left any doubt or ambiguity concerning the existence of federal subject matter jurisdiction, those uncertainties "must ultimately" be resolved against removal and "in favor of remand."   Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006); see also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand to state court.").

It is well established that the grounds for removal must be "unequivocally clear and certain" either on the face of the initial pleading or in any other "removing document," such as "a copy of an amended pleading, motion, order or other paper." <u>Lowery</u>, 483 F.3d at 1215 & n.63 (quoting 28 U.S.C. § 1446(b) and <u>Bosky v. Kroger Texas, LP</u>, 288 F.3d 208, 211 (5th Cir. 2002)).   In other words, "[i]n assessing whether removal [is] proper . . . the district court has before it only the evidence available when the motion to remand is filed — i.e., the notice of removal and accompanying documents." <u>Id.</u> at 1213–14. Consequently, after applying a general presumption against removal and resolving all doubts in favor of remand, the Pinellas County Cases must be remanded to the state court.

### III.   CONCLUSION

Accordingly, it is, therefore, **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand, (Dkt. 13), is **GRANTED**.

2. Plaintiff's Motion to Remand, (Dkt. 73), and Plaintiff's Amended Motion to Remand, (Dkt. 76), both of which were filed in the lead case for case no. 18-cv-00242 consolidated herein, are **DENIED AS MOOT**.

3. The Clerk is **DIRECTED** to **REMAND** the following cases consolidated herein to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida:

    a. <u>Premier Inpatient Partners, LLC, (S.B.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00621-MSS-AAS;

    b. <u>Premier Inpatient Partners, LLC, (Y.G.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00622-MSS-AAS;

    c.  <u>Premier Inpatient Partners, LLC, (K.O.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00623-MSS-AAS;

    d.  <u>Premier Inpatient Partners, LLC, (D.J.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00663-MSS-AAS;

    e.  <u>Premier Inpatient Partners, LLC, (K.M.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00664-MSS-AAS;

    f.  <u>Premier Inpatient Partners, LLC, (B.L.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00665-MSS-AAS;

    g.  <u>Premier Inpatient Partners, LLC, (J.N.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00667-MSS-AAS;

    h.  <u>Premier Inpatient Partners, LLC, (H.L.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00668-MSS-AAS;

    i.  <u>Premier Inpatient Partners, LLC, (C.H.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00798-MSS-AAS;  and

    j.  <u>Premier Inpatient Partners, LLC, (S.T.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00801-MSS-AAS;

4. The Clerk is **DIRECTED** to **REMAND** the following cases consolidated herein to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida:

    a.  <u>Premier Inpatient Partners, LLC, (E.A.) v. Aetna Health & Life Insurance</u>, 8:18-cv-01818-MSS-AAS;

    b.  <u>Premier Inpatient Partners, LLC, (T.H.) v. Aetna Health & Life Insurance</u>, 8:18-cv-01820-MSS-AAS;

c. <u>Premier Inpatient Partners, LLC, (C.R.) v. Aetna Health & Life Insurance</u>, 8:18-cv-01821-MSS-AAS;

d. <u>Premier Inpatient Partners, LLC, (P.Y.) v. Aetna Health & Life Insurance</u>, 8:18-cv-01822-MSS-AAS;

e. <u>Premier Inpatient Partners, LLC, (N.W.) v. Aetna Health & Life Insurance</u>, 8:18-cv-01823-MSS-AAS;

f. <u>Premier Inpatient Partners, LLC, (J.S.1.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02012-MSS-AAS;

g. <u>Premier Inpatient Partners, LLC, (S.A.V.2.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02013-MSS-AAS;

h. <u>Premier Inpatient Partners, LLC, (J.M.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02014-MSS-AAS;

i. <u>Premier Inpatient Partners, LLC, (S.P.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02015-MSS-AAS;

j. <u>Premier Inpatient Partners, LLC, (S.V.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02016-MSS-AAS;

k. <u>Premier Inpatient Partners, LLC, (S.V.2.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02017-MSS-AAS;

l. <u>Premier Inpatient Partners, LLC, (S.A.V.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02020-MSS-AAS;

m. <u>Premier Inpatient Partners, LLC, (A.Z.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02022-MSS-AAS;

n.  Premier Inpatient Partners, LLC, (D.G.2.) v. Aetna Health & Life Insurance, 8:18-cv-02024-MSS-AAS;

o.  Premier Inpatient Partners, LLC, (A.Z.2.) v. Aetna Health & Life Insurance, 8:18-cv-02025-MSS-AAS;

p.  Premier Inpatient Partners, LLC, (L.E.2.) v. Aetna Health & Life Insurance, 8:18-cv-02028-MSS-AAS;

q.  Premier Inpatient Partners, LLC, (D.G.) v. Aetna Health & Life Insurance, 8:18-cv-02029- MSS-AAS;

r.  Premier Inpatient Partners, LLC, (R.M.) v. Aetna Health & Life Insurance, 8:19-cv-00074- MSS-AAS;

s.  Premier Inpatient Partners, LLC, (N.L.) v. Aetna Health & Life Insurance, 8:19-cv-00075- MSS-AAS;

t.  Premier Inpatient Partners, LLC, (T.H.) v. Aetna Health & Life Insurance, 8:19-cv-00076- MSS-AAS;

u.  Premier Inpatient Partners, LLC, (C.W.) v. Aetna Health & Life Insurance, 8:19-cv-00241- MSS-AAS;  and

v.  Premier Inpatient Partners, LLC, (D.A.Z.) v. Aetna Health & Life Insurance, 8: 19-cv-00242- MSS-AAS;

5.  Thereafter, the Clerk is **DIRECTED** to **TERMINATE** any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 29th day of March, 2019.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

28

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person